We have six cases on our calendar this morning. Two district court patent cases, two veterans cases from the Court of Appeals for Veterans Claims, and two government employee cases from the Merit Systems Protection Board. Both of the latter will be submitted on the briefs and therefore not be argued. The first case is Touchcom v. Bereskin & Parr et al., 2008-12-29, Mr. Korpis. Thank you. The narrow question for the Court this morning in this case is whether it can assert personal jurisdiction for a malpractice claim of a foreign patent agent who filed for U.S. patent in the U.S. Patent Trademark Office through the Patent Corporation Treaty Procedure. Now, the appellee's argument boils down to the proposition that a foreign attorney can hold himself and his firm out to be registered to secure U.S. patents, solicit services from a client to obtain a U.S. patent, but because the foreign patent agent chose to file not directly but through the treaty and the WIPO, they can be insulated for liability for any malpractice. We submit that the Court should not create such a loophole and that that argument is inconsistent. Well, they're not insulated from liability for any malpractice. The question is whether or not the case, at least it seems from the record we have, could be brought in Canada. So it's not that they're insulated from any liability, it's just a question of whether or not the U.S. courts, and this court in Virginia in particular, have been insulated from U.S. liability. That's correct. The facts are not in dispute, and as I mentioned, the argument we submit is a technicality. There is no doubt that there would be jurisdiction over both the foreign patent agent and the firm if they filed the patent application directly in the U.S. Patent and Trademark Office. Why is there no doubt about that? Because we believe that that has already been decided by the District Court of Appeals in the Lax Tax Decision, where they said, plain terms, there can be no serious question but that defendants or appellees were transacting business within the district within the usual meaning of that concept. Well, with all due respect to the D.C. Circuit, we're not bound by that. You are not bound by that, but the reasoning of the decision, and the court did use very strong terms, if I can just complete the quote, one can hardly demand the right to come to the District of Columbia to pursue activities exclusively on behalf of an out-of-state principal and expect to be absolutely immune from suit here by that principle for causes of action arising directly out of the performance of such activities. Of course, the court there was dealing with D.C. law, correct? And now we're dealing with Virginia law. Yes, but I don't think there's any real difference in the provisions. The court was dealing with the government exception, the government context exception, but in order to get to the exception, you first have to cross the hurdle of, is there jurisdiction in the first place? Here the attorneys were never in Virginia. We're not dealing with a Virginia applicant. The application, whether it went through WIPO, PTC, or mailed directly to the USPTO, was all by the mail. There was no action in Virginia except a filing in a federal office by mail. But that filing is the most significant act to be taken in connection with the retainer. The attorneys were retained to secure a US patent, and the most significant act is the filing of the patent. We submitted it by filing for a US patent application, whether it be by mail. And in today's environment, filing by mail, filing electronically is much more prevalent, and the court has recognized that in the Burger King case. Whether it's submitted by mail, whether it's submitted in person, we submit that it is the key act that exposes the jurisdiction. They purposely avail themselves to the US patent and trademark office, knowing it's in Virginia. They're not really arguing that they did it in Virginia, they couldn't. And they should expect that there would be jurisdiction over directions. What was the error committed in Virginia? What was the error committed in Virginia? The error committed in Virginia is twofold. Number one is the patent was filed in Virginia through the agency of the WIPO, but it ended up being filed, the patent application was filed in Virginia with the error in it, with the missing source code. It wasn't picked up by the attorneys at the time of filing. But they couldn't make the change in the interim, right? They were stuck with what they had sent over by the WIPO. The only thing they could have done is withdraw the application and refile. Right, but they could not make the change in the interim before it reached the US patent office or as it reached the US patent office. That's right, they could have, however, withdrawn the application and refiled it. But then you might have problems with other art that was filed in the interim, because you filed through the WIPO because of the attempts at least to get the earlier filing date. We wouldn't be any worse off than we are today. Well, there are requirements that have to be followed. Now, my concern is twofold. First of all, the error that's committed is committed in a practice before the patent office. So, does it really arise under the patent laws under 1338? Because there's no jurisdiction here otherwise, is there? Well, the district court did find that it does arise for the purpose of the motion to remand. So, it would be inconsistent for us to now have the same argument used against Tachcom for no finding of personal jurisdiction. We submit that once the district court found that it does arise under the patent laws for the purpose of the remand motion, the same can be applied to the person, should be applied to the person on the jurisdiction issue. Your Honor, I wanted to address the question you asked me earlier, the other error that took place in Virginia, is that there was subsequent correspondence with the patent office and no attempt to correct or withdraw the application even after the initial filing. That's the second act that we see. Michael, let me be clear, because in the blueprint I thought I read that you said that the attorneys were present in Virginia at the patent office. And that's not the case. They were never physically there. Present physically there, I don't believe the record says that. Present through correspondence directly with the patent office, not via the WIPO, yes. Judge Goyal's question, I don't know whether this point was behind his question, but it occurs to me, why do we have jurisdiction of this malpractice action? I'm sorry. Why does the Federal Circuit have jurisdiction of this appeal? Why shouldn't it have gone to the Fourth Circuit? I'm in a bit of a tough spot here, Your Honor, because as you know, we were substituted in for the original counsel. I don't know what the thinking was in filing the Federal Circuit. But thinking about it now, I guess it's because of the district court's decision that it does arise out of a patent case, which was used for the remand motion. Well, we're not considering here whether the source code should have been there. We're just considering the transaction of business, the Virginia long arm statute. Why do we have it? Do we properly have it? I know why we have it. You brought it here. I would submit that you do properly have it, because it was found to be arising out of the patent code, and because if you do find jurisdiction to remand it back, we are going to have to satisfy the trial within trial. What is there in the patent code that we're dealing with? Very good question. I hate to use the Sarah Palin, but I'll have to get back to you on that one. Let me try to help you out. What I know is what the district court did. You were before the district court in Virginia, right? It seems to me, at least in their opinion, they did analyze this question, and they relied on air measurement and that aching gum case. That's what I said. And they said that if they have to determine, but for this there would have been a patent, that there has to be an analysis of the patent. This comes under patent law. I mean, rightly or wrongly, at least that's as much as the district court told us. That's correct, and that's what I was saying. There's going to have to be a case within a case when we do go back to try the malpractice case. But his Honor, Judge Lurie, asked me for a specific code in the patent code. I just don't have one. I apologize. Well, you're here only because the lower court determined that it would arise under the patent laws in the 1338. There's no diversity jurisdiction. You're both Canadian citizens. That is correct. With respect to the issue of the actual tort that was undertaken, it was malpractice, if at all, hypothetically. Now, if, in fact, it's malpractice, then it's under state law that that is determined. Is that determined under federal law? No, I believe that would be under state law. So it would be under state law. So this is a state law cause of action. It's a state law cause of action. And why wouldn't the state court then be in a position of determining whether or not the alleged misfiling of the source code was in error? And the patent, because of that, proved to be invalid. We would have been happy to be in state court. We initially brought this action in state court. It's the court who refused to remand it. I understand that. But at that point, then, the appeal should have been taken to the Fourth Circuit, as Judge Lorry pointed out, because it does not arise under 1338. If at all, it might arise under Rule 4K2. Well, we did argue under Rule 4K2 in our briefs, and we believe that there is jurisdiction under Rule 4K2. But that does not give us jurisdiction. That might be jurisdiction for the Fourth Circuit. All I can go back and say is the district court did rule that there was patent issues here that was arising under a patent case. And if we were to go back to the state court, while the cause of action would be determined under the malpractice law of Virginia for the causation side of the case, they will have to essentially conduct a case within a case. They'll have to conduct the patent trial and assess the other defenses that may have been available to the infringer. Why would Virginia law apply? If the conflicts of laws in the state of Virginia say that the situs would be in Canada, wouldn't Canadian law apply? Wouldn't the local court be required to apply Canadian law? I believe that the court would be required to apply U.S. laws because we're dealing with a U.S. patent here. We're dealing with infringement of a U.S. patent. No, no, you're dealing with malpractice. Right, but... You're not dealing with infringement. You're dealing with malpractice. But the damages for that malpractice are the damages that we would have recovered against the entity in the Texas case had there not been the malpractice. They raise certain other defenses. Those would have to be weighed. Are you saying the malpractice claim necessarily involves a question of U.S. patent law?  Under Christensen v. Colt? And under the district court's decision. And under the district court's decision. Do you want to save your rebuttal time? Thank you. Do you belong here? I hope so. May it please the court. The judgment of the district court in this case should be affirmed. It should be affirmed on one of two grounds. The district court was correct in its jurisdictional analysis. We also believe that the judgment under Rule 12b can be affirmed even if he was wrong on that. On the grounds that this claim is barred by the Virginia statute of limitations. Our position is that the district court correctly decided this case on the jurisdictional claims that were pleaded and the jurisdictional arguments that were presented to him. And that that's the proper basis on which this court should review and on which this court should affirm his decision. The three paragraphs of the amended complaint that contain the jurisdictional allegations are paragraph 6, 7, and 8. Paragraph 6 is a general jurisdiction allegation that was effectively abandoned before the district court and is not raised here. Paragraph 7 and paragraph 8 raise two of the four subsections. Before we go through, Mr. Ashley, doesn't the U.S. have an interest in ensuring that foreign patent applications for patents secured here are adequately represented before the Patent Office? Isn't there a U.S. interest with regard to Patent Office litigation? There is a U.S. interest. There is a U.S. interest, I believe, in the patent itself. But the interest really does not apply to this malpractice case, which is a malpractice case that we believe would be governed by Canadian law and is a dispute between two Canadian citizens over the application of that law. In that malpractice case, there is a question of U.S. patent law that would have to be decided on that case. But as far as the U.S. interest is concerned in the patent itself, that interest was, I think, addressed and determined in the East Texas action where the patent itself was held invalid. The issue in Canada is sort of like the issue in Asahi Metals. The issue in Canada is whether now Touchcom, who has lost its patent, can turn around and get indemnity from its Canadian patent firm for the damages it sustained as a result of the loss of its patent. But if that's true, the court referred to the fact that Virginia law and Canadian law on the malpractice question are very similar. But in that case, doesn't it make sense to adjudicate this case here, particularly in the Eastern District of Virginia, where there's a familiarity with patent law? Because we all recognize that at bottom, to adjudicate this case, there's going to have to be a patent law determination. Well, I think the question was raised before about whether there was jurisdiction in the Virginia court in the first place. And, of course, that's the error measurements in the Municep. Well, whether there's jurisdiction here or in the court circuit. Well, right. But if this case were litigated in the United States, if there was jurisdiction over this claim in the United States, then I think the fact that there is a question of federal patent law involved in the state malpractice case makes it, under Municep and error measurement, makes it appropriate for the federal court to decide the case because the malpractice case turns on that question. But where you have two foreign citizens litigating a breach of contract legal malpractice action under Canadian law, then I don't think the same U.S. interest really holds. The situation there really, again, is like Asahi Metals or like the situation in a case that, and I apologize to the court that we didn't cite, but our opponents didn't either. They relied very heavily on the Lextex case, which was noted earlier in the argument, is a case that was decided by the D.C. Court of Appeals on certification from the D.C. Circuit. And in that case, well, later though, this court did address the same issues that were concerned in Lextex, and it's in the case of Znibok, I think it is, versus Milan Pharmaceuticals. That case is at 173 F. 3rd, 829. And it's an odd decision because there actually were three, two opinions for the court and then a dissent, but there was no opinion on the dissent. But it addresses the same issue as Lextex does, and it concludes that either under the government contracts exception or under the construction, in that case, of Maryland's long-arm statute, that the filing in the patent office, or in that case it was a filing of a new drug application, abbreviated new drug application, in the FDA office in Maryland. And the filing of that application by a generic drug manufacturer was itself a federal tort. So the English company that had the patent sued the Pennsylvania company in Pennsylvania for infringement. That was transferred to Maryland. It went back to Pennsylvania and then was ordered transferred back to Maryland, but certified to this court. And this court looked at that issue. In other words, there was proper jurisdiction in the Maryland District Court because the FDA was there? Well, that was the issue. That was the issue, was whether the company who had been sued in Pennsylvania could be sued in Maryland. And the only thing that it had done in Maryland was to file, make the FDA file. Was the FDA a defendant? No. It was sued by the English company. And, again, there were two opinions that reached the result that it was unconstitutional for that to be a basis of exercise over the generic drug manufacturer. One opinion, as I read it, found that under the government contacts exception that is discussed in the Lex-Tex case that... But Lex-Tex didn't state, and of course it was, as you say, a D.C. Court of Appeals case, not a federal case, and certainly not binding on us, didn't establish a federal, an immunity from suit in the situs of the federal agency. No, what Lex-Tex said was because the agent who was making the filing had failed to disclose the prior art, that that was a tort, that was part of the tort, and therefore the government contacts document didn't apply in... Well, what is the government contracts doctrine? In what case holds accordingly? Well, the government contacts doctrine that was applied in Lex-Tex was originally in another D.C. Court of Appeals case called Environmental Research International. And in that case, you had an out-of-state company that hired a D.C. company to go and help them out before the EPA. They didn't pay, and the D.C. company sued. And the holding in that case was because the work they were doing was to interact with the government agency. That could not constitute doing business within the District of Columbia. Okay, that's a D.C. Court of Appeals holding. That's the D.C. Court of Appeals. The exception, then, that they made in Lex-Tex was that the... where the agent had actually participated, had engaged in tortious conduct, then the government contacts exception didn't apply under those circumstances. But he was not present in D.C., was he, in the Lex-Tex? In Lex-Tex he was. In Maryland? Excuse me? Was he personally present? Yes, yes he was. In D.C. And so... In D.C. or Maryland? In... Alright, now let me go to the Maryland case, though. In Zaniba, he was personally present, or the company was personally... But we're talking about Lex-Tex. In D.C. And that had to do with D.C. Right. Right, okay. But the same thing, Maryland, it was exactly the same thing. And what they held in that case was the principal could not be subject to jurisdiction based upon the infringement. Even though the principal actually infringed, committed an act of infringement in Maryland, and that was the cause of action that the English company was sued on, they held that, under the government contacts exception, that that didn't count as a jurisdictional contact for doing this, and therefore there was no basis for jurisdiction in Maryland. Are you saying we should affirm here on the basis of a government contact? No, you should affirm here on the basis that the district court correctly found that the tort was committed in Canada. It was committed when they failed to, the allegation is they failed to include the source code. So that was a breach of duty. It was the drafting and the rendering of services rather than the filing. That is the, under clear, under Canadian law, as found by the district court, and under Virginia law, it is the, that's the legal injury, is the preparing and then putting in the mail the defective application. That's when the cause of action arose, and so the... But I'm not clear on that. I mean, there's no effect of anything that was done in Canada in the absence of something ending up on the desk of someone at the patent office in Virginia, right? So it's not, can't be entirely happening in Canada. Doesn't, no, it doesn't entirely happen in Canada, but Virginia is very clear on this, and if you read the, it's the Shipman case that we cite in our brief, that the cause of action under Virginia law and the right of action, the legal injury occurs in Canada, even though the damages may be caused by where that application travels and then the effects that result from the application. Well, but the application was prosecuted in the state of Virginia before the patent office. The failure to properly prosecute that application is a cause of action, isn't it? No, sir. What is it? The cause of action is the breach of contract under, is, it's either a breach of contract or it is negligence in preparing a proper application. No, it's negligence in preparing and filing an improper application. There would be no damage in negligently preparing something that never gets filed. Well, but they prepared it and they filed it. If you go by that view, they prepared it and they filed it in England, in Great Britain. Well, that's not a good argument at all. I mean, they filed it before the patent office. They intended to file it before the patent office, period. And that prosecution was a failure in properly prosecuting the patent application. Your Honor, under Virginia law, I think under the Shipman case, it's quite clear that the cause of action arose in Canada when they actually prepared and submitted, and they prepared that improper application. But even if that view is correct, then I go to the Zanibat case because under the government contacts view, which you cannot reconcile with Lex-Tex. Well, this is not a government contacts case. This is an actual prosecution of a patent application. So you're not pursuing a Lex-Tex type of an argument. I don't think Lex-Tex is applicable in that particular situation, is it, if you're looking for the government contacts exception? The only jurisdictional contact that they allege that Bereskin and Parr had was with the patent office in Virginia, and it's the correspondence going to and from the patent office. And we've said that that doesn't amount to transaction in Virginia sufficient based upon the Affinity Memory case. We've said even so, the cause of action doesn't arise from that under the Gallup leasing case. But the third department, even if it does, then under, it was actually your opinion in the Zanibat case, just like the filing with the FDA in Maryland, the filing of the defective application in the patent office in Virginia, it either doesn't count under Judge Rader's view of that, because it has nothing to do with Virginia, or it doesn't count under the government contacts exception because of the way that this court interpreted it in Zanibat. And so for those reasons, we say that the district court's judgment should be affirmed. In addition, as we briefed, that it's also clear under Virginia law that the statute of limitations would bar the claim, even if there were personal jurisdiction. Thank you, Mr. Ashley. Mr. Corpus. Thank you. I just want to go through the Lex-Tex-Zeneca case one more time, so it's clear. We did not cite Lex-Tex for the proposition that the government contacts should or should not apply here. Lex-Tex has language in it where the court said that it really cannot be disputed that there is jurisdiction by filing a patent application in D.C.,  so we cited Lex-Tex for that proposition that the court find it simply beyond dispute that there would be jurisdiction, and I recognize that you, of course, are not bound by that decision, but it is instructive. Now, the Zeneca case is a completely different case. It's not a malpractice case. In our case, we retained the attorneys, Tachcom retained the attorneys, to go and file a patent application, and that was the whole idea of the retainer, was to go and get us a U.S. patent in Virginia as well as patents elsewhere. Zeneca, all that happened in Maryland is that, and I only just saw it because it wasn't in the brief. I was handed it five minutes before the argument, but in the Zeneca case, all that happened is that Zeneca, the generic company, went and filed an FDA filing, which the court recognized was a purely artificial structure. It was not a very difficult process. It's not like going and filing a patent application, which is what the whole retainer was about in our case, and it's for that reason that the court found there was no jurisdiction in Zeneca. You're saying filing an abbreviated new drug application is not comparable to filing a patent application? Yes, Your Honor. Both applications before a federal agency containing a lot of material. I'm saying something a little different, actually. I'm saying that filing an ANDA and whether jurisdiction exists over the filing is not equivalent to the question of whether jurisdiction exists over an attorney who contracted to file for a patent in Virginia. The contract is between us and the attorney here. In the other case, it's a direct suit against the party. Now, Mr. Ashton referred to the shipment case and whether or not injury occurred before the patent office, or in Virginia where the injury occurred in Canada. Of course, that's just one of the four grounds under the Virginia long-term statute requiring that the injury took place in Virginia. The main one we believe that applies is the transacting business provision. There were transacting business before the U.S. patent office. What interest does the state of Virginia have in assuring that a patent application is properly prosecuted before the patent office? Number one, it's because the patent office is located in Virginia. No, I mean what interest does the state of Virginia have? Does it have any interest in making sure that the patent application is properly prosecuted? Well, it has an interest to the extent that there might be an infringing party in Virginia, a point over which we wanted to take discovery but were not given. It may have other interests, but the real interest is the U.S. interest. So there's no greater interest for the citizen of Virginia than there is of a citizen in Maryland? Well, there is the same interest, I would say, depending on where the infringing party is. But there's no infringement here. Well, there isn't. Eventually, there might be an interest in the state of Virginia, but right now there's no interest at all because you prosecute it under federal laws. You're prosecuting it. All of the prosecutors are required to meet certain minimum standards that are set by the patent office, which is a federal agency. The state of Virginia has really minimal interest, if any, in the prosecution of a patent before the patent office. Yes, but the long arm statute, which has the four categories in it, we submit that the actions taken by the appellees fit into each one of those categories. Transacted business in Virginia, contracted to supply goods and services in Virginia. But isn't the long arm statute of the state intended to protect its citizens from someone out of state reaching in to do business with, say, a resident of the state, and the state has an interest in protecting its own citizens? Here it's quite different. The plaintiff and the defendant are Canadians. The only activity in Virginia, if any, is in the federal agency, which is not a defendant or a plaintiff. Well, that is true to an extent, but the long arm statute is also there to determine whether there were sufficient contacts, if there appeared in person before the PTO, for example, and if there was other activity taken in Virginia. Even though the only contact was the U.S. Patent Office, there would still be jurisdiction. All right. Thank you very much, Mr. Crawford. We'll take the case under advisement.